J-S64016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.L.A-L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.L-A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1708 EDA 2018 |

Appeal from the Decree and Order May 24, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000477-2017,
CP-51-DP-0000534-2016, FID: 51-FN000492-2016

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 13, 2018**

D.L.A. ("Mother") appeals from the decree dated and entered on May 24, 2018, granting the petition filed by the Philadelphia County Department of Human Services ("DHS") seeking to involuntarily terminate her parental rights to her minor male child, E.L.A.-L., born in June of 2014, pursuant to the Adoption Act, 23 Pa.C.S. § 2511.[1]  Mother also appeals from the permanency

---

[1] At the hearing on the termination petition held on May 24, 2018, Attorney Mary Ann Galeota represented Child as his child advocate (legal counsel), and Attorney Maureen Pié, represented Child as his guardian *ad litem* ("GAL").  **See In re: Adoption of L.B.M.**, ____ Pa. ____, 161 A.3d 172 (2017) (plurality) (initially filed on March 28, 2017).  In **L.B.M.**, our Supreme Court held that 23 Pa.C.S. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding.  The Court defined a child's legal interest as synonymous with his or her preferred outcome.  In **In re T.S.**, ____ Pa. ____, 192 A.3d 1080 (2018),

review order dated May 24, 2018, pursuant to the Juvenile Act, 42 Pa.C.S. §

6351, directing that E.L.A.-L. remain in the legal custody of DHS, and that he

remain in foster care. Mother's counsel, Attorney Emily Beth Cherniack,

("Counsel") filed with this Court a motion for leave to withdraw as counsel and

a brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967).[2] We

affirm, and grant Counsel leave to withdraw.

The trial court fully and accurately set forth the procedural history and

factual background of this appeal in its opinion entered on June 28, 2018,

_____

the Supreme Court held that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome. The Court explained, "if the preferred outcome of the child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed 'to represent the child,' 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-[GAL] who represents the child's best interests during such proceedings." **Id.** at ___, 192 A.3d at 1092. Here, E.L.A.-L. had both a legal counsel and a GAL. While his preferred outcome is not part of the record, E.L.A.-L., who is autistic, was under the age of four and had been in care for twenty-six months, and was receiving therapeutic services at the time of the hearing. **See** N.T., 5/24/18, at 34. Accordingly, we find that E.L.A.-L.'s pre-verbal age and developmental challenges obviate the need for any inquiry into his preferences, and that the mandates of **L.B.M.** and **T.S.** are satisfied.

[2] The trial court did not terminate the parental rights of E.L.A.-L.'s father, M.L. a/k/a M.J.L., ("Father") at the hearing on the termination petition regarding Mother. Rather, the court granted a thirty-day continuance of the hearing as to the termination of Father's parental rights in order to provide him an opportunity to voluntarily relinquish his parental rights. N.T., 5/24/18, at 8-9. The trial court notes that Father is not a party to this appeal. **See** Trial Court Opinion, 6/28/18, at 1, n.1. We further note that Father did not file a brief or otherwise participate in this appeal.

which we adopt herein. **See** Trial Court Opinion, 6/28/18, at 1-5. On April 27, 2017, the Agency filed petitions to terminate both Mother's and Father's parental rights to E.L.A.-L., and to change E.L.A.-L.'s permanency goal to adoption. On May 24, 2018, the trial court held an evidentiary hearing on the petitions. At the hearing, Mother was present with her counsel. Father's counsel was present, but Father was not present. The legal counsel for E.L.A.-L., Attorney Galeota, was present, as was the GAL, Attorney Pié.

On May 24, 2018, the trial court entered the decree that terminated Mother's parental rights to E.L.A.-L. under sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, and the permanency review order that directed that legal custody of E.L.A.-L. remain with DHS, and that E.L.A.-L.'s permanency goal remain placement in foster care. On June 5, 2018, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal, from the termination decree and permanency review order.

Before we review the substantive issues presented by Mother on appeal, we must first address a procedural question. In **Commonwealth v. Walker**, ___ Pa. ___, 185 A.3d 969 (2018), our Supreme Court recently held:

> [I]n future cases Rule 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal.

*Id.* at 977 (emphasis added).[3]

Here, the decree and order entered on May 24, 2018 from which Mother appeals were listed at two docket numbers in the trial court, one from the adoption (termination) matter, and the other from the dependency (goal change) matter.[4] However, the termination decree solely resolves the issue regarding the termination of Mother's parental rights to E.L.A.-L. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). *See* Decree of Involuntary Termination of Parental Rights, 5/24/18, at 2. The permanency review order does not resolve any issues with regard to dependency, and, notably, the docket number listed on the May 24, 2018 permanency review order references only the Adoption Docket, CP-51-AP-0000477-2017.[5] As the decree and order resolve only issues arising from the trial court's adoption docket, *i.e.*, issues relating to the termination of Mother's parental rights, we find that ***Walker*** is not controlling, and we need not quash the appeal.

_____

[3] ***Walker*** was filed on June 1, 2018; Mother's notice of appeal was filed four days later, on June 5, 2018.

[4] Although Mother included both adoption and dependency docket numbers on her singular notice of appeal, she does not raise any issue with regard to the dependency matter in her appellate brief, nor do we discern any such issues. We observe that the trial court maintained the status quo in the permanency order, as the termination/permanency goal change matter had been continued as to Father.

[5] While the record contains the permanency review order dated May 24, 2018, Mother's issues do not challenge the dependency matter.

On August 20, 2018, Mother's counsel filed a motion to withdraw as counsel and an *Anders* brief on behalf of Mother. In her *Anders* brief on appeal, Counsel raises the following issues on behalf of Mother:

A. Whether the trial court erred in involuntarily terminating [] Mother's parental rights pursuant to 2511(a)(1), 2511(a)(2), 2511(a)(5), 2511(a)(8) where it was not supported by clear and convincing evidence?

B. Whether the trial court erred in involuntarily terminating [] Mother's parental rights where there was a bond between [] Mother and [E.L.A.-L.] and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of the [E.L.A.-L.]?

*Anders* Brief (redacted) at 4.

Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;

(2) file a brief referring to anything that might arguably support the appeal. . .; and

(3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

In *In re V.E.*, 611 A.2d 1267, 1274-1275 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. "When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *In re S.M.B.*, 856 A.2d at 1237.

- 5 -

In **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief:

(1)     provide a summary of the procedural history and facts, with citations to the record;

(2)     refer to anything in the record that counsel believes arguably supports the appeal;

(3)     set forth counsel's conclusion that the appeal is frivolous; and

(4)     state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 602 Pa. at 178-79, 978 A.2d at 361.  "After an appellate court receives an **Anders** brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous."  **In re S.M.B.**, 856 A.2d at 1237.

With respect to the third requirement of **Anders**, that counsel inform the defendant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."  **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Counsel has complied with each of the requirements of **Anders**. Counsel indicates that she conscientiously examined the record and

- 6 -

determined that an appeal would have no meritorious issues, and that the appeal is wholly frivolous. Further, Counsel's **Anders** brief comports with the requirements set forth by the Supreme Court of Pennsylvania in **Santiago**. Finally, attached to her motion to withdraw is a copy of Counsel's letter to Mother, dated August 20, 2018.[6] In compliance with **Millisock**, the letter stated Counsel's intention to seek permission to withdraw, and advised Mother of her right to proceed by submitting any comments or arguments to this Court on her own behalf, or to retain new counsel to represent her on appeal. Accordingly, Counsel has complied with the procedural requirements for withdrawing from representation, and we will proceed with our own independent review.

In the **Anders** brief, Counsel raised whether the Agency presented insufficient evidence to support the involuntary termination of Mother's rights under sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. **Anders** Brief, at 4.[7]

_____

[6] The letter is dated August 20, 2018, but also includes a second date of February 6, 2015, which is an apparent typographical error.

[7] In her **Anders** brief, Counsel does not challenge the permanency review order under section 6351 of the Juvenile Act This Court has stated, "[o]nce counsel has satisfied the above requirements [for a motion to withdraw and **Anders** brief], it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (*quoting* **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa. Super. 2004). **See Commonwealth v. Flowers**, 113

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record

_____

A.3d 1246, 1250 (Pa. Super. 2015) (following *Goodwin*). Thus, we may address whether the Agency established the grounds for the termination and the goal change to adoption as part of our independent review. As we noted above, we discern no such issues, since the trial court maintained the status quo in the permanency order because the termination/permanency goal change matter was continued as to Father.

- 8 -

and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (1994).

***In re Adoption of S.P.***, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (*quoting **In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Sections 2511(a)(2) and (b) provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 9 -

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The Supreme Court set forth our inquiry under section 2511(a)(2) as

follows.

As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

***In re Adoption of J.J.***, [511 Pa. 599, 605,] 515 A.2d 883, 891 (Pa. 1986) (*quoting **In re: William L.***, [477 Pa. 322, 345,] 383 A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 616 Pa. at 326-327, 47 A.3d at 827.

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 620 Pa. 602, 628-629, 71 A.3d 251, 267 (2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as

- 11 -

well. Additionally, section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.,*** 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." ***In re K.Z.S.***, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis. ***In re K.K.R.-S.***, 958 A.2d 529, 535 (Pa. Super. 2008). Thus, the court may emphasize the safety needs of the child. ***See In re K.Z.S.***, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

In its opinion entered on June 28, 2018, the trial court fully and adeptly discussed its reasons for finding that the Agency satisfied its burden of proof under sections 2511(a)(2) and (b). We, therefore, find no abuse of the trial court's discretion in terminating Mother's parental rights to E.L.A.-L. under sections 2511(a)(2)and (b). ***In re Adoption of S.P.***, 616 Pa. at 325-26, 47

A.3d at 826-27. Finding no issues of merit, either with regard to the termination decree or the permanency review order, after our independent review of the record, we, thus, affirm the trial court's termination decree and permanency review order on the basis of the trial court opinion, and grant counsel's motion for leave to withdraw. We direct the parties to attach the trial court's opinion to all future filings based upon our disposition of this appeal.

Decree and order affirmed. Motions to withdraw granted.[8] Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn, Esq._

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/13/18

---

[8] We grant counsel's motions to withdraw at both the adoption and dependency dockets pertaining to this case. ***See Supra.*** at footnotes 4 and 5.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
JUVENILE DIVISION

| | | |
|---|---|---|
| IN RE: E.L.A.-L., a Minor | : | SUPERIOR COURT |
| | : | 1708 EDA 2018 |
| | : | |
| | : | |
| | : | COURT OF COMMON PLEAS |
| | : | CP-51-DP-0000534-2016 |
| APPEAL OF: D.L.A, Mother | : | FID: 51-FN-000492-2016 |
| | : | CP-51-AP-0000 477- 2017 |
| | : | |
| | : | |

**OPINION**

DAINE GREY JR., J.                         DATE: ~~July 5,~~ June 26, 2018

D.L.A ("Mother") timely appeals this Court's decree entered on May 24, 2018, granting

the Philadelphia Department of Human Services' ("DHS") petitions to involuntarily terminate

her parental rights as to her child, E.L.A.-L., born on June 21, 2014, (the "Child") pursuant to the

Adoption Act, 23 Pa. C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b).[1]

## I.    PROCEDURAL HISTORY & FACTS

The relevant facts and procedural history of this case are as follows: DHS first became

aware of this family in March of 2016 when it received a call stating that Mother was

hospitalized due to mental health concerns. (N.T. 5/24/18 at 16-17). The report was determined

to be valid, and based on the allegations in the report, an Order of Protective Custody was

obtained for the Child. (*Id.* at 17). At a shelter care hearing for the Child on March 4, 2016, this

Court granted temporary legal custody of the Child to DHS. (Trial Court Order 3/4/18 at 1). DHS

---

[1] Father, is not a party to this appeal.

1

subsequently filed dependency petitions for the Child and an adjudicatory hearing was held on March 22, 2016. (Trial Court Order 3/22/16 at 1). DHS granted Mother supervised weekly visits with the Child at the agency. (*Id.*). At the adjudicatory hearing, this Court adjudicated the Child dependent based upon the findings of abuse and neglect, granted full legal custody of the Child to DHS and placed the Child in Foster Care. (*Id.*). An initial permanency review hearing was held on November 22, 2016, at which time, the permanency goals for the Child were identified as reunification with Mother or guardian. (Trial Court Order 11/22/16 at 1).

On April 27, 2017, DHS filed petitions to involuntarily terminate Mother's parental rights to the Child pursuant to 23 Pa. C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b) and to change the Child's permanency goals to adoption. This court conducted a combined termination and goal change hearing (collectively the "TPR" hearing) on May 24, 2018. At the TPR hearing, the Community Umbrella Agency ("CUA") case manager supervisor, Deconte Baker, testified that the Child has been in foster care since the initial placement in March 2016. (N.T. 5/24/18 at 17). Ms. Baker testified that Mother's single case plan objectives were as follows: 1) participate in and complete a mental health program, 2) participate in and complete drug and alcohol treatment, 3) medication management, and 4) parenting capacity. (*Id.* at 18). Mother's single case plan objectives have been consistent throughout the life of the case. (*Id.*). According to Ms. Baker, the goal in the last single case plan conducted on February 16, 2018, was changed to adoption. (*Id.* at 17).

In regards to Mother's compliance with her objectives, Ms. Baker testified that Mother was non-compliant. (*Id.* at 29). Specifically, Ms. Baker testified that Mother never completed a mental health program. (*Id.* at 18). Ms. Baker testified that Mother was enrolled in a mental health program at John F. Kennedy Behavioral Health Center ("JFK"), however Mother refused

2

to sign a release of information to DHS regarding Mother's compliance or what she was being treated there for. (*Id.* at 19). Mother was also enrolled in a mental health program at The Wedge Recovery Center and NorthEast Treatment ("NET"), however Mother was discharged from the Wedge due to her aggressive behavior. (*Id.* at 20-21). Ms. Baker testified that Mother was involved in a verbal altercation with a member at the program and proceeded to use a fire extinguisher to spray the other members in the hallway. (*Id.* at 21). Further, Mother was discharged from the NET program in February 2017 for non-compliance. (*Id.* at 22).

In regards to Mother's drug and alcohol treatment, Mother has never successfully completed a drug and alcohol program throughout the life of this case. (*Id.* at 22-23). On February 20, 2018, Mother tested positive for cannabis and refused to sign releases for the Clinical Evaluation Unit ("CEU") in order to verify whether she was enrolled in treatment. (*Id.* at 23). Mother also tested positive for cannabis on April 1, 2016 and April 28, 2016. (*Id.* at 24). In regards to Mother's medication management, Mother was provided a dual diagnosis assessment. (*Id.*). Mother is diagnosed with Bipolar disorder and Post Traumatic Stress Disorder (PTSD). (*Id.* at 25). Ms. Baker testified that Mother has not been compliant nor consistent with medication management because she has not signed the consents. (*Id.*). Mother was also referred in September 2016 to ACA for a parenting capacity evaluation, however she did not attend any of the scheduled evaluations. (*Id.* at 22).

With respect to Mother's visitation with the Child, Ms. Baker testified that Mother was to attend visits with the Child at the agency. (*Id.* at 25-26). Mother had visits with the Child from March 2016 to July 2016, however the visits were suspended on November 22, 2016. (*Id.* at 26-27). Ms. Baker testified that the visits were suspended when Mother began spitting on the staff members and demonstrated an aggressive and threatening nature. (*Id.* at 27-28). As a result of

3

Mother's behavior, workers were no longer willing to supervise her visits. (*Id.*). The visits with the Child were moved to the courthouse, where Mother's aggressive behavior persisted and therefore visits were suspended. (*Id.*). When asked about Mother's housing situation, Ms. Baker testified that Mother refused to disclose any information to her or the agency and therefore was unable to confirm Mother had appropriate housing. (*Id.* at 28).

Ms. Baker indicated that it would be in the Child's best interest to terminate Mother's parental rights because she has never addressed her mental health needs, she has not completed a drug and alcohol program, consistently tests positive for cannabis, has not cared for the Child for the majority of his life, approximately 26 months, and is not bonded with the Child. (*Id.* at 29-30). Ms. Baker further testified that the Child has a strong bond with his maternal aunt who is the pre-adoptive resource and she religiously attends every scheduled visit with the Child. (*Id.* at 34-35). Ms. Baker also testified that the Child receives services for autism and will continue to receive services if the Child is adopted. (*Id.* at 35, 39).

At the TPR hearing, Mother testified that her intensive outpatient drug and alcohol treatment was reduced as a result of her deteriorating physical and mental health. (*Id.* at 49). Mother also testified that she was incarcerated from May 5, 2017 to December 5, 2017 and has since been on probation. (*Id.* at 51-52). Mother further admitted to testing positive for Marijuana on a bi-weekly basis. (*Id.* at 52). Mother testified that she attended the Joseph J. Peters Institute ("JJPI") for additional trauma therapy on April 16, 2018, however Mother only began attending JJPI two months prior to the TPR hearing. (*Id.* at 50).

Based on the foregoing testimony, this Court issued a decree involuntarily terminating the parental rights of Mother under 23 Pa. C.S.A. §§ 2511(a)(1), (2), (5), and (8) and finding, in accordance with 23 Pa. C.S.A. §§ 2511(b), that such termination best serves the developmental,

4

physical, and emotional needs and welfare of the Child. (Trial Court Order 5/24/18 at 1). Mother, along with counsel, filed a timely Notice of Appeal along with a Statement of Errors.

## II.  DISCUSSION

### A.  This Court Properly Granted Petitioner's Petition to Involuntarily Terminate the Parental Rights of Mother Pursuant to Sections 2511(a)(1), (2), (5), (8) and (b)

When considering an appeal from an order involuntarily terminating parental rights, an appellate court must accept as true the trial court's findings of facts so long as they are supported by the record, and then determine whether the trial court made an error of law or abused its discretion in rendering its decision. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. Super. 2012). A trial court's decision constitutes an abuse of discretion only if it is manifestly unreasonable or is the product of partiality, prejudice, bias, or ill will. (*Id.*). An abuse of discretion will not merely occur because the reviewing court might have reached a different decision. *In re R.J.T.*, 608 Pa. 9 A.3d 1179, 1190 (Pa. Super. 2010).

The party seeking termination must establish, by clear and convincing evidence, the existence of grounds for termination. *In re J.L.C.*, 837, A.2d 1247, 1251 (Pa. Super. 2003). Clear and convincing evidence is testimony that is "so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) *(en banc)*.

The involuntary termination of parental rights is governed by 23 Pa.C.S.A. § 2511, which requires a two-step analysis. In the first step, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the 11 grounds set forth in Section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). Once the court determines that the party seeking termination has proven at least one of the 11 grounds in Section 2511(a),

5

then the petitioner can proceed to the second step. In the second step, the court must determine whether termination is in the best interest of the Child, considering the developmental, physical and emotional welfare of the child. 23 Pa.C.S.A. § 2511(b); *In re Adoption of S.P.*, 47 A.3d at 830. In conducting this analysis, the court should examine the emotional bond between parent and child, with close attention to the effect of what permanently severing any such bond will have on the child. *In re L.M.*, 923 A.2d at 511. Additionally, in order to affirm, an appellate court need only agree with the trial court as to any one subsection of 2511(a), as well as 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

This court found grounds for involuntary termination of Mother's parental rights existed pursuant to 2511(a)(1), (2), (5), (8) and (b). (*See* Trial Court Order 05/24/18 at 1). This Court will address each subsection separately.

1. **This Court Properly Terminated Mother's Parental Rights Pursuant to Section 2511(a)(1)**

Pursuant to Section 2511 (a)(1), Pennsylvania law provides that parental right may be involuntarily terminated after a petition is filed if, "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511 (a)(1).

This Court found clear and convincing evidence that Mother demonstrated a settled purpose of relinquishing parental claim to the Child and failed to perform parental duties for the Child six months prior to when the petition was filed. The Child was removed from the Mother's care and temporary custody was given to DHS on March 4, 2016. The Child has been in foster care since the initial placement in March 2016. (N.T. 5/24/18 at 17). Mother's refusal to parent

6

since that time was demonstrated in her failure to meet her single case plan objectives. Mother failed to address her mental health needs and has never completed a drug and alcohol program. (*Id.* at 22-23). Mother continues to test positive for Marijuana. (*Id.* at 23). Mother testifies that she enrolled in JJPI on April 16, 2018 and JFK on March 5, 2018 for mental health services. (*Id.* at 50). However, she refused to sign releases of information to DHS and she sought these services after the termination petition was filed. (*Id.* at 62). According to the testimony of the CUA case manager, pursuant to 23 Pa.C.S.A. § 2511 (a)(1), any efforts to remedy the situation after the termination petition is filed is not relevant. (*Id.*).

Furthermore, Mother has a concerning aggressive and threatening nature. Mother was enrolled at the Wedge for mental health treatment and was discharged in October of 201[6] due to her aggressive and threatening behavior. (*Id.* at 20-21). Additionally, Mother was enrolled at the NET and her enrollment was terminated on February 2017 for non-compliance. (*Id.* at 22). Lastly, Mother did not attend visits with her Child since November 2016. (*Id.* at 27). Mother had been attending visits from March 2016 to July 2016 at the agency. (*Id.* at 26). Mother's visits at the agency were suspended and moved to the courthouse due to her aggressive and threating nature. (*Id.* at 27). However, the visits were suspended on November 22, 2016 because Mother spit on staff and again showed an aggressive and threatening nature. (*Id.* at 28). These minimal objectives would have demonstrated Mother's interest in caring for the Child; however, Mother made little efforts to fulfill these objectives. Additionally, Mother offered no evidence that she made even the slightest efforts to re-establish ties with the Child during the six-month period prior to the filing of the termination petitions. Accordingly, this Court found termination of Mother's parental rights warranted pursuant to 2511(a)(1).

7

## 2. This Court Properly Terminated Mother's Parental Rights Pursuant to Section 2511(a)(2)

When terminating parental rights pursuant to Section 2511(a)(2), the moving party must prove by clear and convincing evidence:

> [t]he repeated and continued incapacity, neglect, abuse or refusal of the parent has caused the child to be without parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511 (a)(2); *See also, In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). Additionally, the grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct, but may also include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). In *In re Adoption of M.E.P.*, Westmoreland County Children's Bureau took custody of the child, citing the mother's inability to care for her child due to the mother's mental handicap. 825 A.2d at 1268. Following adjudication of the child, the mother was ordered to apply for welfare programs, obtain housing, and receive counseling in order to promote her independence and parenting skills. (*Id.* at 1269). It was reported that the mother did not attempt to obtain welfare or housing and refused counseling. (*Id.*). As a result, the trial court terminated the mother's parental rights approximately two years after the child was removed from the home. (*Id.* at 1270). The Superior Court found that the mother's inability to develop parenting skills, along with her refusal to fulfill her objectives, would leave the child without proper parental care; thus, termination of the mother's parental rights was warranted under Section 2511(a)(2). (*Id.* at 1273).

Applying *M.E.P.* and the elements set forth under 2511(a)(2) to the instant case, it is clear that DHS met their burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to remedy the problems that led to the Child's placement. Mother failed to cooperate with the services provided by CUA, including drug and alcohol treatment and mental health counseling. (N.T. 5/24/18 at 22-23). Further, Mother threatened, spat on, and was aggressive towards workers at CUA and at the NET. (*Id.* at 26-27). As a result, the workers at the NET did not permit Mother to continue her visitation at their agency. (*Id.* at 27). Moreover, the evidence established that "neglect" existed given that Mother's visitation was suspended since November 2016 and no efforts were made by Mother to remedy the suspension. (*Id.* at 26-28). This Court found that Mother's failure to fully comply with her objectives throughout the life of the case has left the Child without essential parental care, and the cause of such neglect, refusal and continued incapacity will not be remedied by Mother. Based on the foregoing, this Court found that competent evidence existed to justify the termination of Mother's parental rights pursuant to Section 2511(a)(2).

3. **This Court Properly Terminated Mother's Parental Rights Pursuant to Sections 2511(a)(5) and (8)**

As the requirements for terminating parental rights under Sections 2511(a)(5) and (8) are similar, this Court will address them simultaneously. To terminate pursuant to 2511(a)(5), the petitioner must prove that:

> (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal or placement of the child continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the

9

parent are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re B.C.*, 36 A.3d 601, 607 (Pa. Super. 2012)[2]. In order to terminate under 2511(a)(8), the petitioner must prove that "(1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008)[3]. Furthermore, unlike 2511(a)(5), termination under 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to placement. *See In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted). Instead, 2511(a)(8) "requires only that the conditions continue to exist, not an evaluation of parental willingness or ability to remedy them." *C.L.G.*, 956 A.2d at 1007 (*citing In re S.H.*, 879 A.2d 802, 806) (Pa. Super. 2005)).

In the instant case, this Court determined that DHS satisfied the requirements of Sections 2511(a)(5) and (8). The Child has been in care for approximately twenty-six months. (N.T. 05/24/18 at 29-30). The Child was initially removed from Mother's home amid concerns regarding Mother's mental health instability and drug and alcohol history. (*Id.* at 18). Since that time, Mother has not progressed in any of the treatment offered to her. (*Id.* at 22-23). Specifically, Mother still has drug and mental health issues. (*Id.* at 29). As a result, this Court

---

[2] In *In re B.C.*, 36 A.3d 601 (Pa. Super. 2012), for example, Children and Youth Services obtained custody of the child after reports were received indicating that the mother and father could not care for the child. *Id.* at 608. In affirming the termination of the father's parental rights, the Superior Court emphasized the father's failure to comply with his objectives from Children and Youth Services, including obtaining housing and addressing his history as a sex offender through treatment. *Id.* The court stressed that the father's refusal to enter into treatment for the crimes he perpetrated led to the unsafe condition still being present. *Id.* Furthermore, the court determined that the father's refusal to participate in his objectives demonstrated that the services provided to him would not remedy the dependency. *Id.* at 610. Lastly, the court found that terminating the father's parental rights would best serve the needs and welfare of the child as it would provide the child with stability. *Id.* at 610.

[3] In *In re C.L.G.*, 956 A.2d 999 (Pa. Super. 2008), for example, the child was removed from the mother's care after the child tested positive for cocaine at birth. *Id.* Also, the mother did not have adequate housing and could not properly care for the child. *Id.* The largest obstacle to reunification was the mother's continued drug use and inability to obtain stable housing. *Id.* at 1005. The trial court terminated the mother's parental rights pursuant to 2511(a)(8) approximately one year after the child was removed from her care. *Id.* at 1003. The Superior Court affirmed the trial court's ruling, stressing that waiting further for the mother to comply would toll the child's wellbeing. *Id.* at 1007. In the interest of creating stability for the child, the court found that termination of the mother's parental rights would best serve the needs and welfare of the child. *Id.* at 1008-1009.

10

believes that Mother will not remedy the conditions which led to the placement of her Child. Also, Mother's refusal to participate in her objectives demonstrates that the services provided to her would not alleviate the circumstances which necessitated the original placement of the Child. Moreover, the evidence clearly established that termination would be in the best interest and welfare of the Child as he has a strong bond with his maternal aunt who is the pre-adoptive resource and religiously attends every scheduled visit with the Child. *(Id.* at 24-25). Thus, this Court properly terminated Mother's parental rights pursuant to Sections 2511(a)(5) and (8).

## B. This Court Properly Ruled that it Would be in the Child's Best Interest to Terminate the Parental Rights of Mother Pursuant to Section 2511(b)

Having found that the statutory grounds for termination have been satisfied pursuant to 2511(a), this Court further found that termination of Mother's parental rights serves the best interest of the Child pursuant to 2511(b).[4]

Under Section 2511(b), the party seeking termination must prove by clear and convincing evidence that termination is in the best interest of the child. *In re Bowman,* 647 A.2d 217, 218 (Pa. Super. 1994). In determining the best interest of the child, courts must consider both the needs and welfare of the child. *In re K.Z.S.,* 946 A.2d 753, 760 (Pa. Super. 2008). Intangibles such as love, comfort, security and stability are also considered when making a determination. *Id. (citing In re C.P.,* 901 A.2d 516, 520 (Pa. Super. 2006)). Furthermore, the parent-child relationship is examined in order to determine what effect the potential termination would have on the child. *See K.Z.S.,* 946 A.2d at 760. Typically, when examining the nature of the parent-child relationship, courts must consider whether there is a natural bond between the parent and

---

[4] *See In re L.M.,* 923 A.2d 505, 511(Pa. Super. 2007) ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)").

child, and if termination of parental rights would sever "an existing, necessary, and beneficial relationship." *Id.* In cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. (*Id.* at 762-63.)

In the instant matter, this Court determined the Child would not suffer irreparable emotional harm if Mother's parental rights were terminated. There was compelling testimony offered at the TPR hearing that the Child is not bonded with Mother. (*See* N.T. 5/24/18 at 43-44). Mother failed to offer any evidence establishing the existence of a parent-child bond. The testimony demonstrated that the Child's primary bond is with his maternal aunt. (*See Id.* at 44). Furthermore, this Court found Mother's significant gap in visitation with the Child insufficient to foster a meaningful and healthy parental connection. This Court believes that we are nowhere closer to reunification now than we were when this case first came in in March 2016. Additionally, in determining that termination would best serve the needs and welfare of the Child, this Court considered that Mother has not been able to meet the Child's emotional, physical, and developmental needs, or provide the Child with a healthy, safe environment for twenty-six months prior to the TPR hearing. (*Id.* at 29-30). For the foregoing reasons, this Court properly granted DHS's petition to involuntarily terminate the parental rights of Mother pursuant to Section 2511(b).

# I. CONCLUSION

Accordingly, this Court respectfully requests that the instant appeal be denied.

BY THE COURT:

J.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **OPINION** was served on the following on June 28, 2018:

**Counsel for Mother**
Emily Cherniack, Esquire
1500 JFK Blvd. Ste. 1010
Philadelphia, PA 19102
( ) Served in Person
( ✓ ) Served by First Class Mail

**Counsel for Father**
Tracey Chambers-Coleman
20 Vine Street
Lansdale, PA 19446
( ) Served in Person
( ✓ ) Served by First Class Mail

**Office of the City Solicitor-Child Welfare Unit**
Rachel Hantgan Mchale, Esquire
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
( ) Served in Person
( ✓ ) Served by First Class Mail

13

**Child Advocate**
Mary Ann Galeota, Esquire
1551 Market Street Ste. 1200
Philadelphia, PA 19102
( )   Served in Person
(✓)   Served by First Class Mail

**Guardian ad Litem**
Maureen Pie, Esquire
8 Summit Street Ste. 200
Philadelphia, PA 19118
( )   Served in Person
(✓)   Served by First Class Mail

BY THE COURT:

_____
                                    J.

14